FILED
2026 Mar-27  PM 03:53
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

STATE NATIONAL INSURANCE
COMPANY, INC.,

     **Plaintiff**,

v.

DAMON TREADWELL, *et al.*,

     **Defendants**.

**Case No. 2:24-cv-1424-HDM**

## SANCTIONS ORDER AGAINST EDWARD EUGENE MAY, II

This case is before the court because attorney Edward Eugene May, II, representing Defendants Damon and Catherine Treadwell, fabricated quotations in a filing to the court. (*See* Doc. 66).

## BACKGROUND

On February 26, 2026, Plaintiff State National Insurance Company, Inc. ("State National"), moved for entry of final judgment against multiple defendants. (Doc. 64). The court ordered Defendants Damon Treadwell and Catherine Treadwell ("the Treadwells") to respond to State National's motion by March 12th. (Doc. 65). The Treadwells' attorney, Mr. May, timely filed a response that contained two purported quotations attributed to two different cases. (Doc. 66 at 4). The first quote and the authority to which it is cited is:

The Eleventh Circuit's predecessor court explained in *Nishimatsu Construction Co. v. Houston National Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975):

> A default judgment is unassailable on the merits only so far as it is supported by well-pleaded allegations . . . but it does not establish facts against non-defaulting defendants.

*Id.* The second quote and the authority to which it is cited is:

> *See Whelan v. Abell*, 953 F.2d 663, 674 (D.C. Cir. 1992) ("Default judgment cannot be used to establish liability against non-defaulting defendants.").

*Id.* In conducting research while writing its order on State National's motion for final judgment, the court searched thoroughly for these two quotes. Neither quote could be found in the cases to which Mr. May attributed them, and, after further research, the court concluded that neither quote exists at all.

On this basis, the court ordered Mr. May to "show good cause, if there be any, why he should not be sanctioned—based on the quotations identified in this order and any additional misrepresentations of law discovered in Mr. May's filings in this case—under Federal Rule of Civil Procedure 11, the court's inherent authority, Local Rule 83.1(f), and/or Alabama Rule of Professional Conduct 3.3 for making false statements of fact or law to the court." (*See* Doc. 68). In his response—which he filed twenty-six minutes after the deadline of which he had a week's notice—Mr. May admits to using generative AI while preparing the Treadwells' brief. (Doc. 69 at 2). Specifically, Mr. May states,

2

> [I] initially uploaded multiple source material [sic] into ChatGPT to produce a preliminary outline then took said outline and uploaded it into Opencase [sic] to produce a more refined draft version. This process was repeated until a satisfactory version of the draft was obtained. That version was then copied and pasted into a word processor application and edited to develop a final version, which was ultimately filed herein.

*Id.* At the subsequent show-cause hearing—to which he arrived approximately ten minutes late—Mr. May admitted that, while editing, he did not thoroughly check all citations to ensure that each quote included in the final version did, in fact, exist. Transcript of Show-Cause Hearing at 21–22 (March 26, 2026). Mr. May confirmed that the quotations were hallucinations of one or both of two popular generative artificial intelligence ("AI") applications used by Mr. May—ChatGPT and OpenCase. (Doc. 69 at 2). In simpler terms, the quotes Mr. May cited were completely made up and resulted from what Mr. May admits was a "lack of diligence" on his part. (Doc. 69 at 3).

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

Citations to fake legal authority pose a serious threat to the fair administration of justice and the integrity of the judicial system, and they require an equally serious sanction. *Johnson v. Dunn*, 792 F. Supp. 3d 1241, 1246 (N.D. Ala. 2025). This court has stated,

> **Even in cases like this one, where lawyers who cite AI hallucinations accept responsibility and apologize profusely, much damage is done**. . . . [T]he court spends time reviewing materials, holding hearings, deliberating about sanctions, and explaining its

3

ruling; the substance of the case is delayed; and public confidence about the trustworthiness of legal proceedings may be diminished.

*Id.* at 1257 (emphasis added). Other harms affect the judicial system more broadly:

There is potential harm to the reputation of judges and courts whose names are falsely invoked as authors of the bogus opinions and to the reputation of a party attributed with fictional conduct. It promotes cynicism about the legal profession and the American judicial system. And a future litigant may be tempted to defy a judicial ruling by disingenuously claiming doubt about its authenticity.

*Id.* (quoting *Mata v. Avianca, Inc.*, 678 F. Supp. 3d 443, 448 (S.D.N.Y. 2023)).

If any lawyer is under the misapprehension that, as long as he brings the correct issues to the court's attention, the court will come to the correct conclusion on its own and therefore he need not worry about the granular accuracy of his citations, that lawyer must shift his mindset. The importance of this topic is not solely rooted in some high-minded ideal of the legal profession as an honorable one. In order to fairly, efficiently, and, above all, *accurately* adjudicate cases, federal courts *must* be able to rely on the specific authorities cited by parties, not simply the broad principles of law they state. The federal judiciary has neither the resources nor the obligation to do a lawyer's job for him, especially given his clients are already paying him to do that job. Every second the court spends doing a lawyer's job for him—as this court was compelled to do for Mr. May—is a disservice to his clients and a waste of taxpayer dollars that needlessly defers other necessary work.

4

Accordingly, the court makes the following conclusion of law and findings of fact based on Mr. May's conduct.

## I.   Sanctions Authority

Rule 11(b) provides that "[b]y presenting to the court a pleading, written motion, or other paper[,] . . . an attorney . . . certifies that to the best of the person's knowledge, information, and belief, *formed after an inquiry reasonable under the circumstances* . . . the claims, defenses, and other legal contentions are warranted by existing law." Fed. R. Civ. P. 11(b)(2) (emphasis added). "If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." *Id.* (c)(1). "A sanction imposed under [Rule 11] must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated" and "may include nonmonetary directives." *Id.* (c)(4).

Rule 11 "imposes an objective standard of reasonable inquiry which does not mandate a finding of bad faith." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 47 (1991). Rule 11 focuses on "the signer's conduct" "at the time of filing." *Jones v. Int'l Riding Helmets, Ltd.*, 49 F.3d 692, 695 (11th Cir. 1995) (emphasis and internal quotation marks omitted). "[T]he purpose of Rule 11 as a whole is to bring home to

the individual signer his personal, nondelegable responsibility." *Pavelic & LeFlore v. Marvel Ent. Grp.*, 493 U.S. 120, 126 (1989).

To impose Rule 11 sanctions *sua sponte*, the court must find that offending conduct is "akin to contempt." *Kaplan v. DaimlerChrysler, A.G.*, 331 F.3d 1251, 1255 (11th Cir. 2003). But,

> This court does not understand that standard to require a finding of subjective bad faith. Such a requirement would be inconsistent with explanations from the Supreme Court and the Eleventh Circuit that Rule 11 is objective, *see, e.g.*, *Chambers*, 501 U.S. at 47; *Jones*, 49 F.3d at 695, and the reality that "[a]s originally drafted, Rule 11 set out a subjective standard, but the Advisory Committee determined that this standard was not working," *Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 549 (1991).

*Johnson*, 792 F. Supp. 3d at 1258.

Local Rule 83.1(f) provides that attorneys may be disciplined for acts or omissions that are inconsistent with the local rules, the *Alabama Rules of Professional Conduct*, and the *American Bar Association Model Rules of Professional Conduct.* N.D. Ala. R. 83.1(f). It further provides that "[d]iscipline under this Rule may consist of disbarment, suspension, censure, reprimand, removal from a particular case, ineligibility for appointment as court-appointed counsel, ineligibility to appear [*pro hac vice* or on behalf of the United States], monetary sanctions, or any other sanction the court may deem appropriate." *Id.*

Alabama Rule of Professional Conduct 3.3 provides that "[a] lawyer shall not knowingly . . . [m]ake a false statement of material fact or law to a tribunal." Ala.

6

Rules of Pro. Conduct r. 3.3(a)(1). The comments to the Rule provide that "an assertion purporting to be on the lawyer's own knowledge, as in an affidavit by the lawyer or in a statement in open court, may properly be made only when the lawyer knows the assertion is true or believes it to be true on the basis of a reasonably diligent inquiry." Ala. Rules of Pro. Conduct r. 3.3. cmt. They further provide that "[l]egal argument based on a knowingly false representation of law constitutes dishonesty toward the tribunal." *Id.*

The court's sanctioning authority is not limited to these rules. *Johnson*, 792 F. Supp. 3d at 1258. For more than two hundred years, "[i]t has long been understood that '[c]ertain implied powers must necessarily result to our Courts of justice from the nature of their institution,' powers 'which cannot be dispensed with in a Court, because they are necessary to the exercise of all others.'" *Chambers*, 501 U.S. at 43 (quoting *United States v. Hudson*, 11 U.S. (7 Cranch) 32, 34 (1812)). "Courts have long recognized an inherent authority to suspend or disbar lawyers . . . derive[d] from the lawyer's role as an officer of the court which granted admission." *In re Snyder*, 472 U.S. 634, 643 (1985). Thus, "a federal court has the power to control admission to its bar and to discipline attorneys who appear before it." *Chambers*, 501 U.S. at 43 (citing *Ex parte Burr*, 22 U.S. (9 Wheat) 529, 530 (1824)). "An attorney who violates his or her ethical obligations is subject to professional

7

discipline, including sanctions, suspension, and disbarment." *Connick v. Thompson*, 563 U.S. 51, 66 (2011).

## II.    False Statements of Law and Conclusions as to Mr. May

The court finds, based upon its own careful review and Mr. May's admission, that the purported quotations in the filing at issue were made up and thus to attribute those quotes to the quoted authority was to make false statements of law. (*See* Docs. 66, 69). Mr. May admits that he personally used generative AI to draft the filing at issue and that he submitted the filing to the court without ensuring that the assertions within were legally correct. (Doc. 69 at 2). The court finds that Mr. May's conduct is "akin to contempt," *Kaplan*, 331 F.3d at 1255, as it flagrantly disregards his obligations as an attorney under Rule 11. As the court understands Mr. May's position, he does not contest his responsibility in any way (Doc. 69 at 3) ("[T]he undersigned Counsel would now say that any explanations provided above are not excuses for what has occurred but only explanations as ordered by the Court, and that he takes full responsibility for his lack of diligence in not more fully examining his work product prior to submission to the court, something for which the undersigned Counsel fully apologize [sic] to the Court and also its staff for the time and energy spent as a result of his actions.").

## SANCTIONS

Rule 11 states that if an attorney presents to the court "legal contentions" that "are [not] warranted by existing law," that attorney may be sanctioned after notice and a reasonable opportunity to respond. Fed. R. Civ. P. 11(b)(2), (c)(1). Mr. May presented to the court two purported quotations as legal contentions, and neither quotation is warranted by existing law. (*See* Doc. 66 at 4). Mr. May has been given notice and a reasonable opportunity to respond. (*See* Docs. 68, 69). *See also* Transcript of Show-Cause Hearing (March 26, 2026).

Accordingly, the court must now determine an appropriate sanction under Rule 11.[1] This court has stated that "[a]n appropriate and reasonable sanction must . . . correspond to the extreme dereliction of professional responsibility that sham citations reflect (whether generated by artificial or human intelligence), and . . . effectively communicate that made-up authorities have no place in a court of law." *Johnson*, 792 F. Supp. 3d at 1246. "Rule 11 assigns particular value to the deterrent function of a sanction." *Id.* at 1265 (citing Fed. R. Civ. P. 11(c)(4) (providing that sanctions "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated")).

---

[1] Because Rule 11 provides adequate sanctions in this case, the court, in its discretion, chooses not to pursue sanctions under other statutes or its inherent authority.

Here, the court finds a public reprimand with a limited publication requirement to be fitting. Some meaningful sanction is absolutely necessary, especially considering the court's concerns regarding Mr. May's cavalier approach to these proceedings, evidenced by his sloppy and unedited response to the court's Order to Show Cause, (*see* doc. 69, "Response to Courts [sic] Order to Show Casue [sic]"), his late filing of that response, (*see id.*), and his tardiness to the show-cause hearing, *see* Transcript of Show-Cause Hearing at 10–11 (March 26, 2026). Mindful of the fact that Mr. May has been apologetic and forthcoming with his lack of diligence and use of generative AI, the court finds that any greater sanction is unnecessary. Specifically, the court will not, in this instance, refer this matter to the Alabama State Bar, order a monetary fine, disqualify Mr. May from this case, or suspend him from practice in the Northern District of Alabama, though Mr. May is **WARNED** that each of these options is on the table should he commit a similar infraction in the future.

**CONCLUSION**

For the reasons explained herein, the court **ORDERS** as follows:

1. The court **PUBLICLY REPRIMANDS** Mr. May.

2. To effectuate his reprimand, the court **ORDERS** Mr. May to provide a copy of this Order to his opposing counsel and presiding judge in every pending state or federal case in which he is counsel of record, as well as to the Treadwells. Mr. May

10

must comply with this requirement **before 4:00 p.m. on April 6, 2026,** and must certify to the court within twenty-four hours of that deadline that the requirement has been met.

3. To further effectuate the reprimand and deter similar misconduct by others, the Clerk of Court is **DIRECTED** to submit this Order for publication in the Federal Supplement.

**DONE** and **ORDERED** on March 26, 2026.

_____
**HAROLD D. MOOTY III**
UNITED STATES DISTRICT JUDGE

11